J-A11011-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JASON K. FOLCKEMER | : | |
| | : | |
| Appellant | : | No. 990 MDA 2025 |
| | : | |

Appeal from the Judgment of Sentence Entered June 11, 2025
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000544-2023

BEFORE:  BECK, J., NEUMAN, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:                    **FILED: JULY 9, 2026**

Jason Folckemer ("Folckemer") appeals from the judgment of sentence imposed by the Lebanon County Court of Common Pleas ("trial court") following his convictions of two counts each of aggravated assault, simple assault, and recklessly endangering another person.[1]  On appeal, Folckemer challenges the sufficiency of the evidence supporting his aggravated assault (second degree felony) and recklessly endangering another person convictions.  After review, we affirm.

On February 4, 2023, Folckemer left the Kleinfeltersville Hotel & Tavern ("Hotel") in Newmanstown, Pennsylvania.  Folckemer had taken melatonin and was seen stumbling in the street.  As Folckemer attempted to cross the

---

[1] 18 Pa.C.S. §§ 2702(a)(4), 2701(a)(3), 2705.

street, a vehicle driven by Tyler Miller ("Miller") almost struck him.[2]  Miller stopped his vehicle and opened the car window to apologize and ask if Folckemer was okay.  Folckemer responded "sorry[,] you're about to be." N.T., 4/23/2025, at 40.  He then reached into his jacket.  Before Folckemer pulled anything out, Miller quickly drove away.  Miller then heard a gunshot and saw a muzzle flash in his rearview mirror.  Neither Miller nor Thornton were injured.  They reported the incident to the police, who upon further investigation, identified Folckemer as the individual leaving the Hotel.  The police found that Folckemer owned a .380 caliber handgun, and Folckemer turned the gun over to the police.  A few months later, Miller found a bullet lodged in the trunk of his car.  The police tested the bullet and determined that it matched Folckemer's gun.  Subsequently, the police arrested Folckemer, and the Commonwealth charged him with two counts of simple assault and two counts of recklessly endangering another person.

Folckemer initially agreed to plead guilty to the charges in exchange for fifteen days of incarceration or thirty days of house arrest.  The trial court rejected the proffered plea agreement based upon the circumstances of the offense.  The trial court rescheduled the case for further prosecution. Subsequently, the Commonwealth amended the criminal information to include two counts of aggravated assault as first-degree felonies and two

---

[2] Miller's girlfriend Alexis Thornton ("Thornton") was a passenger in the vehicle.

counts of aggravated assault as second-degree felonies in addition to the prior charges.

The case proceeded to trial, after which the jury found Folckemer guilty of the aforementioned crimes, and found Folckemer not guilty of the remaining charges. On June 16, 2025, the trial court sentenced Folckemer to an aggregate term of eighteen to forty-eight months in prison. He filed a timely appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Folckemer raises two questions for our review:

1. [Whether] the trial court err[ed] in denying [Folckemer's] motion to acquit on two counts of recklessly endangering another person by determining that sufficient evidence had been presented by the Commonwealth to prove beyond a reasonable doubt that [Folckemer] acted with "conscious disregard" as required by statute?

2. [Whether] the trial court err[ed] in denying [Folckemer's] motion to acquit on four counts of aggravated assault by determining that sufficient evidence had been presented by the Commonwealth to prove beyond a reasonable doubt that [Folckemer] acted with "specific intent" as required by Pennsylvania law?

Folckemer's Brief at 8 (some capitalization omitted).

Both claims challenge the sufficiency of the evidence and we therefore address them together. We review a challenge to the sufficiency of the evidence according to the following standard:

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove

- 3 -

every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the [factfinder] to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the [factfinder].

*Commonwealth v. Rosario*, 307 A.3d 759, 764-65 (Pa. Super. 2023) (citation omitted).A person is guilty of recklessly endangering another person "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. "The reckless mental state required for recklessly endangering another person has been defined as a conscious disregard of a known risk of death or great bodily harm to another person." *Commonwealth v. Brockington*, 230 A.3d 1209, 1215 (Pa. Super. 2020) (citation omitted). Conscious disregard "involves first becoming aware of the risk and then choosing to proceed in spite of the risk." *Commonwealth v. Sanders*, 259 A.3d 524, 532 (Pa. Super. 2021) (en banc)

A person commits aggravated assault if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]" 18 Pa.C.S. § 2702(a)(4). An attempt, in the context of an assault, is established when the accused intentionally acts in a manner which constitutes a substantial or significant step toward committing bodily injury in another. *Commonwealth v. Fortune*, 68 A.3d 980, 984 (Pa. Super. 2013) (en banc). The Commonwealth can prove intent by direct or circumstantial

evidence. ***Commonwealth v. Martuscelli***, 54 A.3d 940, 948 (Pa. Super. 2012). Deadly weapon is defined, in part, as "any firearm, whether loaded or unloaded." ***Id.***

Folckemer argues that the evidence was insufficient to prove he recklessly endangered another person. ***Id.*** at 13-16. Specifically, he claims the Commonwealth failed to establish that he acted with a conscious disregard that his actions risked killing or seriously injuring Miller and Thronton. ***Id.*** at 13, 16. According to Folckemer, the evidence at trial was consistent with a negligent discharge of a weapon because Miller testified that he only heard a gunshot and saw a muzzle flash, but he did not testify that he saw Folckemer point the gun, aim the gun, or pull the trigger. ***Id.*** at 13-14; ***see also id.*** at 15-16 (asserting he may have accidentally discharged the gun). Folckemer contends that the mere fact the weapon was discharged is insufficient to establish the element of conscious disregard. ***Id.*** at 15.

For substantially the same reasons, Folckemer argues the evidence was insufficient to support his aggravated assault convictions. ***Id.*** at 17. He contends that the Commonwealth failed to prove that he acted with "specific intent" as no witness saw him point or fire the gun, no tests were done to show the angle of impact, the bullets trajectory, or whether the bullet found lodged in Miller's trunk ricocheted before becoming lodged in the trunk. ***Id.*** at 18. Folckemer again argues that the admitted evidence was just as likely

to support an accidental discharge of the weapon or to show that the gun was used in self-defense after he was nearly hit by a car. *Id.* at 18-19.

The trial court found that the Commonwealth sustained its evidentiary burden for the aggravated assault and recklessly endangering another person convictions by demonstrating that Folckemer shot a firearm at an occupied vehicle. Trial Court Opinion, 08/26/2025, at 10-11. The trial court determined that the evidence presented at trial established that Folckemer told Miller, "You're about to be sorry," then pointed and shot his firearm at Miller's vehicle as it was driving away. *Id.* at 8-9. Further, the court noted that the bullet struck the rear of the vehicle. *Id.* at 9.

Our review of the record and applicable law supports the trial court's determination. At trial, Miller testified that after almost striking Folckemer with his car, he pulled over to the side of the road. N.T., 4/23/2025, at 38-40, 50. He observed that Folckemer was visibly intoxicated. *Id.* at 50. As Miller attempted to apologize, Folckemer, in an aggressive tone, stuttered the word "sorry," and then said, "you're about to be." *Id.* at 40. This statement scared Miller. *Id.* at 41. Folckemer reached in his jacket, but before Miller saw anything, he drove away as quickly as possible, as he felt threatened by Folckemer. *Id.* at 41, 42, 51. As he drove away, Miller heard multiple gunshots and saw a muzzle flash in the rearview mirror. *Id.* at 43, 51-52. Miller testified that he later found the metal jacket of a bullet lodged in the trunk of his car. *Id.* at 49.

Thornton testified consistently with Miller at trial. *Id.* at 57-67; *but see id.* at 63, 66 (stating that she heard one gunshot and saw the muzzle flash). Further, Corporal Jason Weaver, a certified firearm and tool mark examiner, testified that the bullet found lodged in Miller's car matched a bullet fired from Folckemer's gun in a lab setting. *Id.* at 132-33, 150-51.

Folckemer testified that on the night in question, he took between five and seven melatonin to try to sleep. *Id.* at 168. He repeatedly said he did not remember anything that happened after he left the Hotel. *Id.* at 169, 170, 176, 180-83. Further, Folckemer claimed that he owned the gun for self-defense and target practice, and that it is plausible the gun went off accidentally. *Id.* at 170, 176.

Beginning with Folckemer's claim of self-defense, he has not cited any evidence, and our independent review of the record reveals none, to support this contention. *See Commonwealth v. Mayfield*, 585 A.2d 1069, 1071 (Pa. Super. 1991) (noting there must be some evidence, from any source, to justify a finding of self-defense). Further, although he testified that the discharge of the gun was likely accidental, the jury clearly rejected his claim. Indeed, Folckemer repeatedly testified that he did not remember anything that occurred on the night in question. *See Rosario*, 307 A.3d at 764-65 (stating that determining the credibility of a witness is within the province of the jury).

Viewed as our standard of review requires, the evidence established Folckemer threatened Miller and then fired a gun into his vehicle, where Thornton was a passenger, thus committing two counts of by attempting to cause bodily injury to the victims. *See Commonwealth v. Woods*, 710 A.2d 626, 630-31 (Pa. Super. 1998) (concluding the evidence was sufficient to find the necessary intent to support an aggravated assault charge where defendant fired his weapon into an occupied vehicle). The evidence further established that Folckemer recklessly endangered the lives of Miller and Thornton as he fired a gun at Miller's car, aware that Miller and Thornton were in the vehicle. *See Commonwealth v. Hartzell*, 988 A.2d 141, 144 (Pa. Super. 2009) (the defendant's purposeful shot into the water in the direction of the men on the bridge, and the defendant's awareness of the men on the bridge satisfied the needed mental state for conscious disregard of a known risk); *see also Commonwealth v. Shaw*, 203 A.3d 281, 284 (Pa. Super. 2019) (noting that discharging a firearm near another person is sufficient to support a recklessly endangering another person conviction). Therefore, Folckemer's claims fail.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/09/2026